Lawrence F. Morrison, Esq.
**MORRISON TENENBAUM PLLC**
*Counsel for the James McGinnis an*
*Assignee of Creditor Finkel Whitefield Selik*
87 Walker Street, Floor 2
New York, New York 10013
(212) 620-0938

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>**JODI A. KNOX**<br><br>Debtor. | Case No.:    20−11596<br><br>Chapter:    13 |

### OBJECTIONS OF JAMES MCGINNIS AS AN ASSIGNEE OF FINKEL WHITEFIELD SELIK TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

**JAMES MCGINNIS as an ASSIGNEE of FINKEL WHITEFIELD SELIK** ("**Finkel**") by and through his counsel, Lawrence Morrison, Esq., Morrison-Tenenbaum, PLLC., hereby file these Objections to Debtor's Chapter 13 Plan, and in support thereof as follows:

1.      On July 8, 2020 (the "**Petition Date**"), Jodi A. Knox ("**Debtor**") filed a Voluntary Petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

2.      Finkel has an unsecured claim against the Debtor for legal services rendered.

3.      On or about July 22, 2020 the Debtor filed a Chapter 13 Plan (the "Plan"). The Debtor also filed the requisite corresponding schedules on that date.

4.      On or about April 8, 2021 the Debtor filed an Amended/ Modified Chapter 13 Plan (the "Plan"). The Debtor also filed the requisite corresponding schedules on that date.

5.      For the reasons set forth herein, and for other reasons which Finkel believes will be revealed in Discovery, the Plan has been proposed in bad faith, seeks to avoid payment of

outstanding debts, does not meet the "bestinterests test," does not meet the "disposable income

test," and should not be confirmed.

### THE PLAN FAILS TO MEET THE CONFIRMATION REQUIREMENTS OF §1325(A)(3) AND (7) BECAUSE THE PLAN IS PROPOSED IN BAD FAITH AND BY MEANS FORBIDDEN BY LAW ANDTHE PETITION WAS FILED IN BAD FAITH

6.      A Debtor's chapter 13 plan **may** only be confirmed if the court finds that the plan

meets each of the enumerated requirements of § 1325(a). "Among these requirements are: (i)

"the plan has been proposed in good faith and not by any means forbidden by law" and (ii) "the

action of the debtor in filing the petition was in good faith." 11 U.S.C. §§ 1325(a)(3) and (7)." *In*

*reWheeler, 511 B.R. 240, 249 [Bankr. N.D.N.Y. 2014]*

7.      The Debtor bears the ultimate burden of proof that she has satisfied the

requirements for confirmation, and that her Plan was "proposed in good faith." Finkle hereby

objects to the Debtor's confirmation plan and asserts that it was filed in bad faith

8.      The courts may consider numerous factors when determining if the Debtor's plan

was proposed in good faith. These factors, in relevant part, includes:

> "(1) the amount of the proposed payments and the amount
> of the debtor's surplus; (2) the debtor's employment history,
> ability to earn, and likelihood of future increases in income;
> (3) the duration of the plan; (4) the accuracy of the plan's
> statement of the debts, expenses and percentage repayment
> of unsecured debt, and whether any inaccuracies are an
> attempt to mislead the court."

9.      The court has repeatedly held that the burden is on the Debtor to establish that her

proposed plan is confirmable. *See In re McCarthy, 376 B.R. 819, 821 (Bankr. N.D. Ohio 2007).*

If the Chapter 13 Trustee or a Creditor objects to the plan, the Debtor must specifically establish

that all the projected disposable income she anticipates receiving during the applicable

commitment period beginning on the date that the first plan payment is due under the plan will

be applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).

10.     In this instance the Debtor's calculations fails to incorporate all of her income to be received during the applicable commitment period in determining her projected disposable income. Indeed, the Debtor indicates additional income and child support, on "Schedule I: Your Income" Form, that she anticipates receiving during such period. She notes that she is "owed significant amount of child support and believes she should be receiving $5,750 in child support a month" as well as $800 in projected income within "the following three months"

11.     Some courts have held that because the Debtor's disposable income must be used to fund the plan, the term "projected" was intended to signal a reexamination of income potential over the life of the plan. In *(Bankr. E.D. Wash. Oct. 27, 2006)* "the word `projected' . . . requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income". The court in *re Bossie,* refused to provide confirmation of a plan because there was insufficient evidence to accurately calculate the Debtor's anticipated /projected disposable income at that time.

12.     Taking into account the additional anticipated income referenced by the Debtor would significantly impact the Debtor's projected disposable income, and therefore the amount she is required to pay her creditors on her enormous unsecured claims. By only including the additional child support in the calculation of the Debtor's projected disposable income would increase by approximately $2925 and would place her firmly above the state's median income.

13.     The courts have consistently held that calculating the Debtor's projected disposable income is a forward looking process, and should not be based solely on the historical data. The court in *re Hardacre* held that "projected disposable income" must be based upon the debtor's anticipated income during the term of the plan, not merely [on] an average of her prepetition income."

14.     In further examining the Debtor's projected disposable income a key factor that the court should take into consideration is "the debtor's employment history, ability to earn, and likelihood of future increases in income" Scrutinizing the Debtor under this light reveals that she is a well-educated individual with a consistent work history, and a high earning potential.

15.     In *re Barbara Gentry Sterrenberg* the court asserts that "The holdings of Ransom, *Hamilton v. Lanning*, and *Morris v. Quigley*, provide clear guidance. Taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, "which was intended to 'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'"

16.     Additionally, because the facts required to further establish Finkle's objections are dependent upon evidence, which are exclusively in the Debtor's possession, Finkle reserves the right to supplement these objections after having taken the Debtor's 2004 examination and obtaining discovery from the Debtor.

17.     Accordingly, based on the facts set forth above, confirmation should be denied because the Debtor's proposed plan does not satisfy the "Best Interest Test" or the "Disposable Income Test."

18.     Finkle intends to take an examination of the Debtor pursuant to Fed. R. Bankr. P. 2004 and to obtain written discovery, because the Debtor is believed to be concealing additional income.

**WHEREFORE**, JAMES MCGINNIS as an ASSIGNEE of FINKEL WHITEFIELD SELIK respectfully requests that this Court deny confirmation of the Debtor's Chapter 13 Plan.

Dated:  New York, New York

May 20, 2021

Respectfully submitted,

**MORRISON TENEBAUM, PLLC**

By: _____

LAWRENCE F. MORRISON, Esq.

*Attorneys for JAMES MCGINNIS as an ASSIGNEE of*
*FINKEL WHITEFIELD SELIK*